Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID GRUVER, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| FLEXION THERAPEUTICS, INC., PATRICK J. MAHAFFY, MICHAEL D. CLAYMAN, SCOTT A. CANUTE, SAMUEL D. COLELLA, UTPAL KOPPIKAR, ELIZABETH KWO, HEATH LUKATCH, ANN MERRIFIELD, ALAN W. MILINAZZO, and MARK STEJBACH, | |
| Defendants. | |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff David Gruver ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.       This is an action against Flexion Therapeutics, Inc. ("Flexion" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"),

15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Flexion by Pacira Biosciences, Inc. ("Pacira") and Oyster Acquisition Company Inc. ("Purchaser"), a wholly-owned subsidiary of Pacira.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Flexion common stock.

7.      Defendant Flexion, a biopharmaceutical company, focuses on the discovery, development, and commercialization of therapies for the treatment of patients with

musculoskeletal conditions in the United States. The Company's common stock trades on the NASDAQ under the ticker symbol, "FLXN."

8. Defendant Patrick J. Mahaffy ("Mahaffy") is Chairman of the Board of the Company.

9. Defendant Michael D. Clayman ("Clayman") is Chief Executive Officer, Co-Founder, and a director of the Company.

10. Defendant Scott A. Canute ("Canute") is a director of the Company.

11. Defendant Samuel D. Colella ("Colella") is a director of the Company.

12. Defendant Utpal Koppikar ("Koppikar") is a director of the Company.

13. Defendant Elizabeth Kwo ("Kwo") is a director of the Company.

14. Defendant Heath Lukatch ("Lukatch") is a director of the Company.

15. Defendant Ann Merrifield ("Merrifield") is a director of the Company.

16. Defendant Alan W. Milinazzo ("Milinazzo") is a director of the Company.

17. Defendant Mark Stejbach ("Stejbach") is a director of the Company.

18. Defendants Mahaffy, Clayman, Canute, Colella, Koppikar, Kwo, Lukatch, Merrifield, Milinazzo, and Stejbach are collectively referred to herein as the "Individual Defendants."

19. Defendants Flexion and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

20. Flexion is a commercial-stage biopharmaceutical company focused on the development and commercialization of local non-opioid therapies for the treatment of patients with

musculoskeletal conditions, including osteoarthritis, postsurgical pain and low back pain. The Company's lead FDA-approved product, ZILRETTA®, is a non-opioid therapy approved to treat osteoarthritis knee pain. The Company has two pipeline programs focused on the treatment of musculoskeletal conditions: FX201, for the treatment of osteoarthritis, and FX301, a peripheral nerve block for control of post-operative pain.

21.     On October 11, 2021, Flexion and Pacira announced that they had entered into a definitive agreement pursuant to which Pacira would acquire Flexion for $8.50 per share in cash, plus one non-tradeable contingent value right ("CVR") worth up to $8.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**<u>Pacira BioSciences to Acquire Flexion Therapeutics Further Expanding<br>Leadership Position in Non-Opioid Pain Management</u>**

October 11, 2021 07:00 ET | Source: Pacira BioSciences

*-- Adds highly complementary ZILRETTA® to Pacira commercial offering --*

*-- Combined portfolio offers end-to-end non-opioid solutions along the pain pathway --*

*-- Further enhances topline revenue growth; provides attractive potential synergies and expected to be accretive to full-year 2022 earnings and significantly accretive thereafter --*

*-- Pacira to host conference call today at 8:30 AM ET --*

TAMPA, Fla. and BURLINGTON, Mass., Oct. 11, 2021 (GLOBE NEWSWIRE) -- Pacira BioSciences, Inc. (Nasdaq: PCRX), the industry leader in its commitment to non-opioid pain management and regenerative health solutions, and Flexion Therapeutics, Inc. (Nasdaq: FLXN) today announced a definitive agreement pursuant to which Pacira will acquire Flexion for $8.50 per share in cash, plus one non-tradeable contingent value right (CVR) worth up to $8.00 per share in cash. The CVR is payable (subject to certain terms and conditions) in the event certain sales and/or regulatory milestones are achieved, as set forth in more detail below. The transaction was unanimously approved by the board of directors of each of Pacira and Flexion.

Flexion is a commercial-stage biopharmaceutical company focused on the development and commercialization of novel, local non-opioid therapies for the treatment of patients with musculoskeletal conditions, including osteoarthritis (OA), postsurgical pain and low back pain. Approved in 2017, Flexion's lead product, ZILRETTA® (triamcinolone acetonide extended-release injectable suspension) is the first and only FDA-approved treatment for OA knee pain utilizing extended-release microsphere technology.

"This acquisition is a major milestone in our strategy to build a robust offering of novel, non-opioid treatments to improve patient care along the neural pain pathway while simultaneously providing us with a complementary commercial asset in ZILRETTA for the treatment of OA knee pain," said Dave Stack, chairman and chief executive officer of Pacira. "We believe the Flexion portfolio further solidifies Pacira as a leader in opioid-sparing pain management as we continue to redefine the role of opioids as a last resort rescue medication. Importantly, this acquisition creates diversification and growth to our topline while providing what we would expect to be meaningful synergies that should result in substantial near- and long-term accretion to our cash flows and earnings."

"Pacira shares our commitment to advancing non-opioid pain control and we believe it is ideally positioned to drive continued clinical and commercial success of ZILRETTA, FX201, and FX301," said Michael Clayman, M.D., chief executive officer and co-founder of Flexion. "This combination with Pacira offers Flexion stakeholders excellent prospects for value creation, particularly as the contingent value rights provide the opportunity to continue to benefit from the ongoing success of Flexion's products and programs."

"I'd like to thank all of our employees – past and present -- for their extraordinary commitment and superb contributions that have translated into ZILRETTA, a medicine that matters, getting to increasing numbers of patients in need and to a pipeline of potentially transformative medicines," continued Dr. Clayman.

**Pacira Transaction Rationale**

- Innovative non-opioid portfolio directly aligns with the Pacira mission to provide an opioid alternative to as many patients as possible and address medical needs along the neural pain pathway.

- Flexion's ZILRETTA is a non-opioid injection that will allow Pacira to offer a treatment to manage OA pain of the knee at an earlier stage of the patient's journey along the neural pain pathway

- Complementary sales call points and clinical-stage pipeline offer significant cost synergies across research and development and commercial activities.

- Adds multiple clinical milestones, including the initiation of a Phase 3 registration trial of ZILRETTA in shoulder osteoarthritis and the advancement

of Phase 1 studies of FX201 for musculoskeletal pain, including OA, and FX301 as a lower extremity nerve block for postsurgical pain.

- Immediately revenue generating and expected to be accretive to full-year 2022 earnings and significantly accretive thereafter.

**Transaction Details**

Under the terms of the definitive agreement, Pacira will commence a tender offer to acquire all outstanding shares of Flexion for a purchase price of $8.50 per share in cash, plus one non-tradeable CVR. The CVR will entitle Flexion stockholders to up to an additional $8.00 per share in cash payable (subject to certain terms and conditions) upon achievement of the following milestones:

- $1.00 per share if total calendar year ZILRETTA net sales achieve $250 million;

- $2.00 per share if total calendar year ZILRETTA net sales achieve $375 million;

- $3.00 per share if total calendar year ZILRETTA net sales achieve $500 million;

- $1.00 per share upon U.S. FDA approval of FX201; and

- $1.00 per share upon U.S. FDA approval of FX301.

The milestones associated with each contingent cash payment must be achieved, if at all, on or before December 31, 2030. There can be no assurance any payments will be made with respect to the CVR. The transaction is not subject to any financing condition and Pacira will fund the transaction from its existing cash resources.

Flexion's board of directors unanimously recommends that Flexion's stockholders tender their shares in the tender offer. Additionally, Flexion's directors and executive officers, or their affiliates, have (subject to certain terms and conditions) agreed to tender their shares in the tender offer.

**Timing to Close**

The transaction is anticipated to close during the fourth quarter of 2021, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Flexion's common stock. Following the successful closing of the tender offer, Pacira will acquire any shares of Flexion that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.

\*     \*     \*

**Advisors**

J.P. Morgan Securities LLC acted as financial advisor to Pacira and Perkins Coie LLP is serving as its legal advisor. Lazard acted as lead financial advisor and Goldman Sachs also acted as financial advisor to Flexion. Cooley LLP is serving as Flexion's legal advisor.

*      *      *

**About Pacira BioSciences**

Pacira BioSciences, Inc. (Nasdaq: PCRX) is the industry leader in its commitment to non-opioid pain management and regenerative health solutions to improve patients' journeys along the neural pain pathway. The company's long-acting local analgesic, EXPAREL® (bupivacaine liposome injectable suspension) was commercially launched in the United States in April 2012. EXPAREL utilizes DepoFoam®, a unique and proprietary product delivery technology that encapsulates drugs without altering their molecular structure and releases them over a desired period of time. In April 2019, Pacira acquired the iovera° system, a handheld cryoanalgesia device used to deliver precise, controlled doses of cold temperature only to targeted nerves. To learn more about Pacira, including the corporate mission to reduce overreliance on opioids, visit www.pacira.com.

**About Flexion Therapeutics**

Flexion Therapeutics (Nasdaq: FLXN) is a biopharmaceutical company focused on the development and commercialization of novel, local therapies for the treatment of patients with musculoskeletal conditions, beginning with osteoarthritis (OA), , the most common form of arthritis. The company's approved product, ZILRETTA®, is the first and only extended-release, intra-articular, or IA (meaning in the joint), injection indicated for the management of OA knee pain. ZILRETTA is a non-opioid therapy that employs a proprietary microsphere technology to provide effective pain relief. To learn more about Flexion, please visit flexiontherapeutics.com.

22.     On October 22, 2021, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B.  The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Solicitation Statement, which recommends that Flexion shareholders tender

their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; (ii) the sales process leading up to the Proposed Transaction; (iii) the Milestone Payments (defined below) and CVR; (iv) other financial analyses performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"), in connection with its fairness opinion; and (v) potential conflicts of interest involving the Company's additional financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs").

24.     The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of Offer and Merger; (ii) Reasons for Recommendation; (iii) Financial Projections and Forecasts; (iv) Opinion of Lazard Frères and Co. LLC; and (v) Item 5. Person/Assets Retained, Employed, Compensated or Used.

25.     The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m., Eastern Time, on November 18, 2021 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares.

26.     Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning the Company's Financial Projections**

27.     The Solicitation Statement omits material information concerning the Company's financial projections.

28.     From January 2021 to March 2021, Flexion's senior management, working with

Goldman Sachs, created a preliminary financial model referred to in the Solicitation Statement as the "Preliminary March 2021 Revenue Forecasts." The Solicitation Statement discloses a table of the Preliminary March 2021 Revenue Forecasts, summarized as follows:

| | Fiscal Year Ending December 31, | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ($ millions) | 2021E | 2022E | 2023E | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E | 2030E | 2031E |
| Base Case Revenue | $125.0 | $167.0 | $213.3 | $256.1 | $297.8 | $340.3 | $381.4 | $423.6 | $465.8 | $507.9 | $553.9 |
| Boost Case Revenue | $125.0 | $167.0 | $219.4 | $285.6 | $362.7 | $442.7 | $522.1 | $603.5 | $685.8 | $768.9 | $861.2 |

29.     The Solicitation Statement, however, fails to disclose all line items used to calculate Base Case Revenue and Boost Case Revenue.

30.     In connection with the Proposed Transaction, Flexion prepared long-range financial projections that were provided to the Board and Lazard (the "Projections"). The Projections contained less optimistic revenue forecasts than the Preliminary March 2021 Revenue Forecasts. The Board directed Lazard to use the Projections in connection with its fairness opinion and related financial analyses. The Solicitation Statement discloses a table of the Projections, summarized as follows:

| | Fiscal Year Ending December 31, | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ($ millions) | 2021E | 2022E | 2023E | 2024E | 2025E | 2026E | 2027E | 2028E | 2029E | 2030E | 2031E |
| Total Revenue | $106 | $125 | $153 | $192 | $239 | $282 | $332 | $386 | $434 | $486 | $546 |
| Gross Profit | $88 | $106 | $130 | $163 | $203 | $240 | $282 | $328 | $369 | $413 | $464 |
| EBIT(1) | $(88) | $(48) | $(23) | $(8) | $24 | $49 | $95 | $139 | $175 | $211 | $249 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Unlevered Free Cash Flow(2) | $(89) | $(65) | $(34) | $(12) | $18 | $44 | $90 | 12 $8 | 16 $1 | 19 $6 | $20 8 |

31.     The Solicitation Statement, however, fails to disclose: (1) all line items used to calculate (i) Total Revenue, (ii) Gross Profit, (iii) EBIT (including Flexion's risk adjusted gross profit for ZILRETTA AND FX301 less cost of goods sold, total operating expenses, FX201 worldwide royalties and milestones, FX301 ex-U.S. royalties and milestones, and certain royalty payments to Xenon Pharmaceuticals, Inc. and Teva Pharmaceuticals International GmbH), and (iv) Unlevered Free Cash Flow (including taxes, depreciation and amortization, capital expenditures, and changes in net working capital); (2) Flexion's net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

32.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

33.     Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor(s), the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

34.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

35.     The Solicitation Statement omits material information concerning the sales process

leading up to the Proposed Transaction.

36.     In February 2021, the Company and Party A executed a confidentiality agreement, "which did not include a standstill provision or a fall-away provision." *See* Solicitation Statement at 16. The Company and Party A purportedly executed another confidentiality agreement in June 2021 "which included a standstill but not a fall-away provision." *Id*. at 17. The Company executed "confidentially agreements" with Party B, Party C, and Party D around July 2021, which "included a standstill provision but not a fall-away provision." *Id*. at 18.

37.     On September 10, 2021, Party A offered to acquire the Company for $8.00 per share in cash, plus one contingent value right per share representing the right to receive one or more contingent payments up to $6.00 in the aggregate upon achievement of specified commercial milestones for ZILRETTA. *Id*. at 20.

38.     That same day, Pacira offered to acquire the Company for $8.00 per share in cash, plus one contingent value right per share representing the right to receive a contingent payment of $1.50 if annual revenues of ZILRETTA exceeded $500.0 million on or prior to December 31, 2027. *Id*. at 20.

39.     On September 23, 2021, Party A's representatives sent the Company's financial advisor, Lazard, a further updated non-binding rider to Party A's September 10th proposal, "adding the potential for holders of contingent value rights to receive approximately 55% of any consideration received by Party A following the divestiture of any of Flexion's pipeline development programs." *Id*. at 21.

40.     On September 23, 2021, representatives of Lazard contacted representatives of Pacira to indicate the Company had received a "transactable proposal." *Id*.

41.     On September 24, 2021, the Company received a non-binding acquisition proposal

from Pacira for $8.25 per share in cash plus one contingent value right per share representing the right to receive one or more contingent payments up to $8.00 in the aggregate upon achievement of specified commercial milestones for ZILRETTA and specified development milestones for Flexion's pipeline development programs. *Id*. at 22.

42.  On September 25, 2021, the Company's financial advisor, Lazard, requested Party A's and Pacira's best and final proposals by noon on September 26, 2021. *Id*.

43.  Later that day, Pacira submitted a revised proposal to acquire the Company for $8.50 per share in cash plus one contingent value right per share representing the right to receive one or more contingent payments up to $8.00 in the aggregate upon the achievement of specified commercial milestones for ZILRETTA and specified development milestones for Flexion's pipeline development programs. *Id*. Pacira's proposal noted that "a failure by Flexion to accept Pacira's September 25th proposal and enter into exclusivity by the end of the day would result in Pacira withdrawing its proposal and ending discussions with Flexion." *Id*.

44.  Consequently, that same day, the Company requested Party A submit their best and final by 8:00 p.m. ET on September 25, 2021. *Id*. at 23. Party A's financial advisor conveyed they would not be able to provide an updated proposal that evening but could provide one by the next morning, which upfront component "would, at most, be $8.50 per Share in cash[.]" *Id*. Party A did not provide a revised proposal by the stated deadline. *Id*.

45.  In light of the foregoing, including Party A's competitive acquisition proposals, the Solicitation Statement omits all relevant terms of the Company's confidential, confidentiality, and nondisclosure agreements with Party A, Party B, Party C, and Party D, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude such interested parties from making

superior offers for the Company.

46.     Without this information, the Company's shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Flexion shareholder would want to know, prior to the expiration of the tender offer, whether other potential buyers are or were foreclosed from submitting a superior proposal.

47.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.  Material Omissions Concerning the Milestone Payments and CVR

48.     The Solicitation Statement fails to disclose material information concerning the probability of achieving the Milestone Payments and the financial forecasts utilized by Lazard in connection with its CVR valuation analysis.

49.     As part of the Proposed Transaction, the Company's stockholders are entitled to receive one non-tradeable CVR enabling each stockholder to receive, subject to the achievement of specified milestones on or prior to December 31, 2030, an amount of cash equal to $8.00 per share (the "Milestone Payments"), as follows:

(i)     $1.00 per CVR, the first time that net sales of ZILRETTA® (triamcinolone acetonide extended-release injectable suspension) in any calendar year equal or exceed $250.0 million.

(ii)     $2.00 per CVR, the first time that net sales of ZILRETTA in any calendar year equal or exceed $375.0 million.

(iii)     $3.00 per CVR, the first time that net sales of ZILRETTA in any calendar year equal or exceed $500.0 million.

(iv)     $1.00 per CVR upon approval by the U.S. Food and Drug Administration (the "FDA") of a biologics license application (BLA) for FX-201, Flexion's clinical stage gene therapy product candidate.

(v)     $1.00 per CVR upon approval by the FDA of a new drug application (NDA) for FX-301, Flexion's investigational product candidate.

*See* Solicitation Statement at 14.

50.     The Milestone Payments represent up to approximately 49% in additional consideration to the Company's stockholders above and beyond the $8.50 per share in cash offered by Pacira. The Milestone Payments of $8.00 per share in the aggregate is material in relation to the total potential merger consideration of $16.50 per share.

51.     On September 25, 2021, the Board, having received Pacira's non-binding proposal to acquire Flexion for $8.50 per share cash and one contingent value right consisting of up to $8.00 in payments per share, "analyzed and discussed . . . the value of the contingent payments in [Pacira's] proposal[,]" which "included an analysis of the probability of the specified milestones being achieved." *See* Solicitation Statement at 22.

52.     The Solicitation Statement, however, fails to disclose the probability of achievement of each of the Milestone Payments. This information must be disclosed. It was relied upon by the Board in recommending that shareholders tender their shares pursuant to the Proposed Transaction and is material to a reasonable shareholder's decision regarding the same.[1]

53.     Further, in connection with its fairness opinion, Lazard analyzed the merger consideration in its "*Analysis of Consideration*." Lazard calculated the CVR's net present value as $2.72 per CVR. In performing this analysis, Lazard calculated the risk-adjusted and probability adjusted net present value of the CVR based upon the revenue forecast and pipeline development timeline as set forth in the "Management Cast Forecasts." More specifically, the Solicitation

---

[1] Indeed, the Solicitation Statement discloses that the Board considered the "Milestones are reasonably achievable" in recommending that shareholders tender their shares. *See* Solicitation Statement at 24.

Statement provides, in relevant part:

> Lazard calculated the risk-adjusted and probability adjusted net present value ("NPV") of the CVR based upon the revenue forecast and pipeline development timeline set forth in the Management Cast Forecasts. For purposes of this analysis, Lazard utilized a discount rate of 6.0%, based on Lazard's estimate of Pacira's cost of debt, to calculate the risk-adjusted and probability-adjusted NPV of potential payments pursuant to the CVR as of December 31, 2021. This resulted in a risk-adjusted and probability adjusted NPV of $2.72 per CVR and, together with the upfront consideration of $8.50, an implied per Share equity value of $11.22.

*See* Solicitation Statement at 35.

54.    Yet, the Solicitation Statement fails to define the term "Management Cast Forecasts," which forecasts were utilized by Lazard to determine the value of the CVR in its "*Analysis of Consideration*." This undefined term appears once in the Solicitation Statement, as quoted above. In light of the foregoing, this term must be defined and any such omitted forecasts must be disclosed so shareholders may adequately value the CVR and Lazard's related analyses.[2]

55.    The disclosure of the aforementioned information is material as it would allow the Company's shareholders to value the CVR (and merger consideration as a whole) and weigh the probability of achievement of the Milestone Payments, which amount represents a material portion of the total merger consideration. This information would also enable shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate this information on their own. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial

---

[2] While the Solicitation Statement provides that "Lazard assumed, at Flexion's direction, that the Milestones set forth in the CVR Agreement will be achieved in amounts consistent with the financial forecasts utilized by Lazard in connection with its opinion," (i) the probability of achievement of each Milestone Payment has still not been disclosed in plain language and with numeric specificity, and (ii) it is unclear which "financial forecasts" this statement is referring to. For example, it is unclear whether the "financial forecasts" refers to the "Management Cast Forecasts," which term is undefined and thus, which forecasts do not appear to be disclosed.

advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

56. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Lazard's Other Analyses

57. The Solicitation Statement fails to disclose material information concerning Lazard's other financial analyses.

58. First, with respect to Lazard's "*Discounted Cash Flow Analysis*," the Solicitation Statement fails to disclose the Company's projected unlevered, after-tax cash flows for fiscal years 2032 through 2042.[3]

59. The Solicitation Statement also fails to disclose the following concerning Lazard's "*Discounted Cash Flow Analysis*": (1) an explanation as to why Lazard did not utilize Flexion's projected cash flows for the fiscal year 2021 in light of Lazard performing a discounted cash flow analysis "[b]ased on the Projections," which contains fiscal year 2021 projections; (2) all line items underlying the after-tax free cash flows for fiscal years 2022 through 2042; and (3) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%. This information is even more material due to Lazard's discounted cash flow analysis resulting in a per share equity value reference range of $7.20 to $9.60 per share, which is significantly less than the implied per share equity value of $11.22 Lazard calculated as part of its "*Analysis of Consideration*."

---

[3] While the Solicitation Statement purports to disclose Flexion's projected unlevered free cash flows for fiscal years 2021 through 2031, (*see* Projections), the Solicitation Statement omits the projections for fiscal years 2032 through 2042.

60.     Second, with respect to Lazard's "*Selected Precedent Transactions Analysis*," three of the five transactions analyzed were announced as far back as 2014. A fourth was announced in 2017, while the most recent transaction was announced in 2019. Lazard's analysis resulted in a wide-ranging equity value per Flexion share of $4.60 to $13.60. Particularly in light of the foregoing, the Solicitation Statement must disclose the individual financial metrics, closing dates, and transaction values of each transaction observed.

61.     Third, with respect to Lazard's "*Selected Public Companies Analysis*," the Solicitation Statement fails to disclose the individual financial metrics and multiples of each company observed.

62.     Fourth, with respect to Lazard's "*Premia Paid Analysis*," the Solicitation Statement fails to disclose the premiums paid in each transaction Lazard observed in its analysis.

63.     Fifth, with respect to Lazard's "*Research Analyst Price Targets*" analysis, the Solicitation Statement fails to disclose the price targets observed and the sources thereof.

64.     The valuation methods, underlying assumptions, and key inputs used by Lazard in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Lazard's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, the Company's shareholders are unable to fully understand Lazard's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

> **5.  Material Omissions Concerning Potential Conflicts of Interest Involving Goldman Sachs**

65.     The Solicitation Statement omits material information concerning potential

conflicts of interest involving Goldman Sachs.

66.     The Solicitation Statement provides that the Company retained Goldman Sachs as a financial advisor in connection with the Proposed Transaction, pursuant to which the Company has agreed to pay Goldman Sachs an aggregate fee of $1,000,000.

67.     The Solicitation Statement, however, fails to disclose: (1) the amount of Goldman Sachs' compensation that is contingent upon consummation of the Proposed Transaction; and (2) whether Goldman Sachs and/or its affiliates have performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received for providing such services.

68.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

69.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

70.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

72.     During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

73.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

74.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

75.     Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

76.     By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

77.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder**
**<u>Against All Defendants</u>**

78.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     Defendants caused the Solicitation Statement to be issued with the intent to solicit

shareholder support for the Proposed Transaction.

80.    Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

81.    SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

82.    In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

83.    During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

84.    Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the

Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

85.    Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

86.    The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

87.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88.    The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

89.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful

information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

90.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

91.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

92.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

93.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 2, 2021                              Respectfully submitted,

                                                     **HALPER SADEH LLP**

                                                     By: /s/ Daniel Sadeh
                                                     Daniel Sadeh, Esq.
                                                     Zachary Halper, Esq. (to be admitted *pro hac vice*)
                                                     667 Madison Avenue, 5th Floor
                                                     New York, NY 10065
                                                     Telephone: (212) 763-0060
                                                     Facsimile: (646) 776-2600

Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*